*327 The opinion of the Court was delivered by
Todd, J.
Josephine Trosclair, wife of Drauzin Triche, died in 1853, leaving five eliildreu and a succession, consisting mainly of an undivided half, or community interest, in a sugar plantation in the Parish of Lafourche, known as the “Laurel Grove Plantation.”
One of the children, Octavie Triche, now Mrs. Leonidas Trosclair, was a minor at the death of her mother, and her father, Drauzin Triche, was appointed her natural tutor. He died in 1875, without rendering an account of his tutorship. Olympe Triche was appointed administrator of his succession, and as such, filed an account of the tutorship. Lapene & Eerré, and other creditors of Drauzin Triche, opposed the account. Judgment was rendered, on trial of the oppositions, in favor of Mrs. Trosclair, for fifty-eight 9-100 dollars, from which she has appealed.
The deceased never kept any books or accounts relating to the matters of the tutorship, and the account of tutorship filed by the administrator mentioned, is based on estimates of the nett proceeds of the annual crops made on the plantation, the whole of which was cultivated, by Triche, in his own interest, and where no evidence existed to make such estimates of the crops. Several years’ rentals of the plantation supplied the place of such estimates. The conclusions of the Judge a quo are founded on estimates of the profits realized from the planting, operations of the years comprising the term of the tutorship and the minors’ shares of the same. All of this is vague and conjectural. The ward, however, should not be made to suffer for omissions and irregularities on the part of the tutor. Ho incurred certain responsibilities under the relation assumed by him, and to these he must be made to respond, and neither the tutor nor his creditors can be permitted to derive benefit from his negligences, in the discharge of the duties of his trust.
It is, however, a matter of difficulty in this condition of things to arrive at any accurate conclusion in regard to the actual liability of the tutor, and even to adopt a satisfactory basis, from, which to pursue our investigations touching the state of his accounts with his ward. And whatever mode may. be adopted, under the. circumstances of uncertainty and confusion attending the subject, the result can only be at best an approximation of the true indebtedness or exact balance.
It is pretty much a . similar state of facts as existed in the case of Vance vs. Vance, 32 A. 188, where this Court said: “Whether we adopt one or the other of the methods suggested for the calculation, the result will be reached. As the tutor mingled the administration of the minors’ estate with his own, and manifestly cultivated and used them in his own interest so that no fair statement of the matter can *328 be made, the proper mode of calculation is to charge him with the rent and hire of the land, slaves and movables, and to charge him at the end of each year with interest at five per cent, on the amount of that year’» rent 5 also, to charge him up with the various sums received front other sources.” ,
A thorough examination of the record, and review of the evidence, satisfies us that the same plan of settlement should be adopted in this case. The tutor is without authority to blend the means of the minor with Ms own, and use his estate in his own business, with the expectation that the minor is to share the losses of the business and take his chances of the profits. The law does not permit an administration of the minor’s estate so precarious and uncertain. The tutor is authorized to lease a plantation of the minor or his interest therein, C. C. 346, and if, instead of doing so, he chooses to cultivate it himself and for his own advantage, he should be compelled to pay the same rate of rental himself at which it could have been leased. And, under the circumstances of this case, there ’ is no other way by which anything like a just settlement of the matter can be made. If we depart from this, all becomes conjecture, involving uncertainty and confusion. And whilst a settlement, based on the rentals of the property, may fail to do justice between the parties, under the facts presented, no more reasonable or just mode is open to us.
The Judge a quo estimated the rental of the entire plantation at $3,000 per annum, and the most positive testimony of at least one witness, fixed it at $4,000; we are inclined, from a consideration of all evidence bearing on this point, to adhere to the Judge’s estimate. The tutor must be charged with the rents of the property from the time his usufruct ceased at his second marriage in 1864, and charging him with the rents from that time up to, and including the year he died, (1875) and with certain movable property upon the inventory, we make up the following settlement:
ASSETS.
Item I — Rent of Laurel Grove Plantation from 1864 to 1875, both years inclusive, say 12 years, at $3,000 per annum............................................$ 36,000 00
Item II — 5 per cent, interest on rent of 1864, from Jan. 1, 1865, to June 28th, 1881, (date of filing account) say 16 years, 5 months and 27 days...................... 1,802 08
Item III — 5 per cent, interest on rent of 1865, from Jan. 1, .. 1866, to same date, say 15 years, 5 months, 27 days... 1,780 18
Item IV — 5 per cent, interest on rent of 1866, from Jan. 1, 1867, to same date, say 14 years, 5 months, 27 days... 1,607 08
*329 Item V — 5 per cent, interest on rent of 1867, from Jan. 1, 1868, to same date, say 13 years, 5 months, 27 days... 1,555 18
Item VI — 5 per cent, interest on rent of 1868, from Jan. 1, 1869, to same date, say 12 years, 5 months, 27 days... 1,442 68
Item VII— 5 per cent, interest on rent of 1869, from Jan. 1, *■ 1870, to same date, say 11 years, 5 months, 27 days... 1,330 18
Item VIII— 5 per cent, interest on rent of 1870, from Jan. 1, 1871, to same date, say 10 years, 5 months, 27 days... ■ 1,225 18
Item IX— 5 per cent, interest on rent of 187Í, from Jan. 1, 1872, to same date, say 9 years, 5 months, 27 days____ 1,112 68
Item X — 5 per cent, interest on rent of 1872, from Jan. 1, 1873, to same date, say 8 years, 5 mouths, 27 days____ 1,000 18
Item XI — 5 per cent, interest on rent of 1873, from Jan. 1, 1874, to same date, say 7 years, 5 months, 27 days____ 887 68
Item XII — 5 per cent, interest on rent of 1874, from Jan. 1, 1875, to same date, say 6 years, 5 months,'27 days____ 775 18
Item XIII — 5 per cent, interest on rent of 1875, from Jan. 1, 1876, to same date, say 5 years, 5 months, 27 days..'.. 625 18
Item XIV — Movables (exclusive of mules and farming utensils) to be found in Inventory “A,” (Record, p. 41)____ 532 50
Total assets........................$51,827 16
Of this the ward, Mrs. Trosclair, is entited to 1-5 of 1-2, or say 1-10 of whole.................................. $5,182 71
LIABILITIES.
Item I — Board, tuition, etc., of the minor, as per admission................................ $1,956 00
Item II — Costs of filing account, etc............. 75 00 2,031 00
Balance due ward.................. $3,151 71
Less 1-10 of the Badeaux Judgment, $13,904.24, (community debt.).............................................. 1,390 42
Net balance due.................... $1,761- 29
On this balance, legal interest must he allowed from date of the filing of the account, 28th of June, 1881, and for the amount of the same a legal mortgage must be recognized on the immovables of the estate of tutor. This mortgage was not allowed by the Judge a quo, and its recognition is strenuously opposed by the opponents’ counsel, on the ground of an alleged insufficient registry to preserve the mortgage. -The evidence of the mortgage, seasonably recorded, consists of a certificate of the clerk of the proper court, which declares or certifies in effect that the inventory and supplemental inventory of the succession of Mrs. Josephine Trosclair, on file in his office, shows an amount of *330 89,058.35, coming to Marie Octavio Triclie, born of tho marriage of said Josephine Trosclair and Drauzin Triche. This is virtually ah abstract of the inventory, and shows a substantial compliance with tho law on tho subject of such registry, and this view of the matter is sustained by the ruling' in case of Donnell vs. Grant, 24 A. 189; C. C. 3351.
In our above statement of the tutorship account, it will appear that we have charged Mrs. Trosclair with her proportion of the community debt, being- the Badeaux judgment. This charge is resisted on tho ground that Triche, the tutor, had assumed the payment of the community debts.
Itis true, that in the purchase from the major hoifs of their interest in the community property, he assumed payment of the community debts, as part of the consideration of the sale, but lie never acquired the interest of the minor heir, which she still retains, and that interest remained burdened with the proportion of the debts and must be charged to her in this settlement.
Nor have we discussed the several exceptions filed by the opponents, for the reason that from the silence of the counsel of opponents in their argument before this Court respecting them, we consider them abandoned.
It is therefore ordered, adjudged and decreed, that the judgment appealed from be amended, by increasing the balance in favor of Mrs. Leonidas Trosclair, as found by the Court below, to one thousand seven hundred and sixty-one 29-100 dollars, which the succession of Drauzin Triche, deceased, is condemned to pay her, with five per cent, interest thereon, from the 28th June, 1831, and for said sum and interest, a legal mortgage be, and the same is recognized against the immovables of said succession, to date and take effect from the beginning of the tutorship, 6th December, 1866, and that opponents pay costs of this appeal.